UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
ONEWEST BANK, NA,

                                      Plaintiff,

             - against -

HUGO RUBIO, JR., *et al.*,

                                     Defendants.
-----------------------------------------------------------------------x

**OPINION AND ORDER**

No. 14-CV-3800 (CS)

Appearances:
Allison J. Schoenthal
Jonathan E. Samon
Hogan Lovells US LLP
New York, New York
*Counsel for Plaintiff*

Wendy M. Weathers
Cabanillas & Associates, P.C.
White Plains, New York
*Counsel for Defendant*

Seibel, J.

      Before the Court is Plaintiff's Motion for Summary Judgment. (Doc. 48.) For the following reasons, Plaintiff's motion is GRANTED.

**I.    BACKGROUND**

      The following facts are based on Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1, (Doc. 52) ("P's 56.1 Stmt."), and Defendant's Response to Plaintiff's Rule 56.1 Statement of Material Facts, (Doc. 56) ("D's 56.1 Stmt."), and are undisputed except as noted.

      This is an action to foreclose a mortgage loan. Plaintiff OneWest Bank, NA, is a national banking association with a principal place of business in Pasadena, California. (D's 56.1 Stmt. ¶

1.)  Defendant Hugo Rubio, Jr. is an individual residing in Westchester County, New York, and is the owner of property located at 30 Highland Avenue, Yonkers, New York (the "Property"). (*Id.* ¶¶ 2-3.)

On July 12, 1996, Defendant and two other individuals ("the borrowers") – Maria Rubio, a non-appearing defendant, and Carmen Rivera, who is deceased – obtained a mortgage loan from Weyerhaeuser Mortgage Company in the original principal amount of $133,250, which was memorialized in a note dated July 12, 1996, and secured by a mortgage, also dated July 12, 1996, on the Property.  (*Id.* ¶ 3.)

After a sequence of transfers, Plaintiff became the owner and servicer of the Mortgage Loan on March 19, 2009.[1]  (*Id.* ¶¶ 4-6.)  The borrowers defaulted on the mortgage loan by failing to make a payment due August 1, 2011, and all payments due thereafter.  (*Id.* ¶ 12.)  Plaintiff asserts, but Defendant denies, that "[o]n or about August 18, 2012, OneWest, through its servicing division IndyMac Mortgage Services, mailed a notice of default . . . to each of the Borrowers at the Property, by first class mail."  (*Id.* ¶ 13.)

On May 29, 2013, Plaintiff, through its servicing division IndyMac Mortgage Services, mailed a 90-day notice pursuant to New York Real Property Actions and Proceedings Law § 1304 to each of the Borrowers at the Property by certified and first-class mail.  (*Id.* ¶ 14.) Despite notices of default and opportunities to cure, Defendant failed to cure his default on the

---

[1] The Note was first transferred to Bank of New York Trustee.  (D's 56.1 Stmt ¶ 4.)  Bank of New York Trustee later transferred the Note to IndyMac Bank, F.S.B.  (*Id.*)  In 2008, after IndyMac was closed by the Office of Thrift Supervision, the Federal Deposit Insurance Corporation was appointed as IndyMac's receiver.  OTS chartered a new institution, IndyMac Federal Bank, and appointed FDIC as conservator.  (*Id.* ¶ 5.)  On March 19, 2009, OneWest acquired substantially all assets and mortgage servicing rights of IndyMac Federal from the FDIC.  (*Id.* ¶ 6.) OneWest contracted with Deutsche Bank National Trust Company for the latter to serve as document custodian for the Mortgage Loan.  (*Id.* ¶ 8.)  Deutsche Bank has maintained physical possession of the original Note and Mortgage since 2009.  (*Id.* ¶ 9.)

mortgage loan.  (*Id.* ¶ 18.)  The loan remains in default, with an unpaid principal balance of $117,119.49, plus interest and fees, owing to Plaintiff.  (*Id.* ¶¶ 19-20.)

Plaintiff filed the Complaint against Defendant, Maria Rubio, and several other non-appearing Defendants on May 28, 2014.[2]  (Doc. 1.)  Defendant answered and brought four counterclaims on July 29, 2014, (Doc. 27), and Plaintiff answered the counterclaims on August 19, 2014, (Doc. 31).  This motion followed.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.  The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, and, if satisfied, the burden then shifts to the non-movant to present evidence sufficient to satisfy every element of the claim.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson*, 477 U.S. at 252.  Moreover, the

---

[2] On April 3, 2015, the Court entered an order of partial default judgment in favor of Plaintiff against the non-answering defendants.  (Doc. 65.)

3

non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

### III.   DISCUSSION

"'It is settled that in moving for summary judgment in an action to foreclose a mortgage, a plaintiff establishes its case as a matter of law through the production of the mortgage, the unpaid note, and evidence of default.'" *Capital One Nat'l Ass'n v. 48-52 Franklin*, LLC, No. 12-CV-3366, 2014 WL 1386609, at *4 (S.D.N.Y. Apr. 8, 2014) (quoting *Village Bank v. Wild Oaks*

*Holding, Inc.*, 601 N.Y.S.2d 940, 941 (App. Div. 1993)).[3]  "Once a plaintiff has established its *prima facie* case by presenting the [n]ote, [m]ortgage, and proof of default, the [m]ortgagee has a presumptive right to foreclose, which can only be overcome by an affirmative showing" by the mortgagor that the mortgagee has engaged in "fraud, duress, oppressive or unconscionable actions, or bad faith." *Regency Sav. Bank, F.S.B. v. Merritt Park Lands Assocs.*, 139 F. Supp. 2d 462, 465-66 (S.D.N.Y. 2001) (citing *First Nat'l Bank of Highland v. J&J Milano, Inc.*, 160 A.D.2d 670 (App. Div. 1990)).

Plaintiff has produced the note, (Marks Aff. Ex. A),[4] and the mortgage, (*id.* Ex. B), and Defendant does not dispute Plaintiff's showing that the mortgage loan is in default, (D's 56.1 stmt. ¶¶ 12, 18-20).  Plaintiff has thus established a *prima facie* case.  Defendant has not argued that Plaintiff engaged in fraud, duress, oppression, or bad faith.  Instead, Defendant argues that Plaintiff failed to comply with two conditions precedent in the mortgage agreement: that notice of default be sent by first class mail and that the notice contain verbatim language from the mortgage agreement.  (D's Opp. 3-7.)[5]  Under New York law, failure to comply with a condition precedent enumerated in a mortgage agreement is an affirmative defense to a mortgage foreclosure action.  *Wells Fargo Bank, N.A. v. Eisler*, 118 A.D.3d 982, 982 (App. Div. 2014).

A. *Notice of Default*

The mortgage agreement provides that, in the event of default, Plaintiff can require immediate payment from Defendant only after sending notice by first class mail.  (Marks Aff.

---

[3] The parties agree that New York law governs this action.

[4] "Marks Aff." refers to the Affidavit of Rebecca Marks in Support of Plaintiff's Motion for Summary Judgment, (Doc. 51).

[5] "D's Opp." refers to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, (Doc. 54).

Ex. B ¶¶ 14, 21.)  Defendant argues that Plaintiff has not submitted sufficient proof that it mailed notice to Defendant.  (D's Opp. 4.)

Defendant has misapprehended the nature of his and Plaintiff's burdens on summary judgment in this foreclosure case.  Plaintiff's initial burden as the moving party was to "show[] – that is, point[] out to the district court – that there is an absence of evidence to support the nonmoving party's case," *Celotex*, 477 U.S. at 325, and, Plaintiff having done so here, *see 48-52 Franklin*, 2014 WL 1386609, at *4, the burden is on Defendant to produce evidence creating a genuine issue of fact for trial, *see* Fed. R. Civ. P. 56(c); *see F.D.I.C. v. Giammettei*, 34 F.3d 51, 54-55 (2d Cir. 1994).  This Defendant has failed to do.  In his response to Plaintiff's Local Rule 56.1 statement of material facts, Defendant denies that Plaintiff mailed the notice, but cites to no evidence in support of his denial, and points to no evidence in his brief (other than the purported insufficiency of Plaintiff's evidence).  (D's 56.1 stmt. ¶ 13; D's Opp. 3-7.)  Defendant has produced no evidence supporting his argument that the notice was not mailed; he has not even submitted a declaration stating he never received the notice.  Plaintiff's assertion that the notice was mailed is thus deemed admitted by Defendant for purposes of this motion.  *See* Fed. R. Civ. P. 56(e)(2); S.D.N.Y. Local Rule 56.1(d); *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003).

In any event, Plaintiff has submitted undisputed evidence from which a reasonable juror could conclude that notice was sent via first class mail.  Rebecca Marks, Assistant Vice President and Manager of Plaintiff's Default Litigation Department, states in her affidavit that Plaintiff's regular practice as of 2012 was to generate and mail notices to borrowers in default and to place a copy of the notice in Plaintiff's loan file, and that, based on her review of Plaintiff's file for Defendant's loan, this regular practice was followed in Defendant's case.  (Marks Aff. ¶ 11.)

Plaintiff also submits a copy of the notice of default along with what appears to be a copy of the computer-generated markings on the envelope in which it was sent.  (*Id.* Ex. G.)  Both are addressed to Defendant and the envelope bears a bar code and a box reading "PRESORT First-Class Mail U.S. Postage and Fees Paid WSO."  (*Id.*)  From this a jury could conclude that Plaintiff complied with the mortgage agreement's requirement to send notice.  Indeed, given the lack of any evidence to the contrary, the jury would be required to do so.[6]

B. *Adequacy of the Notice*

Defendant also argues that the notice, even if it was mailed, is deficient because it lacks language required by the mortgage.  Paragraph 21(B)(vi)[7] of the mortgage agreement provides that the lender must send notice of default stating that the borrower has "the right in any lawsuit for foreclosure and sale to argue that [the borrower] did keep [his] promises and agreements under the Note and under this Security Instrument, and to present any other defenses that [the borrower] may have."  (Marks Aff. Ex. B ¶ 21(B)(vi).)  The notice produced by Plaintiff states

---

[6] Defendant has cited New York cases that state that "unsubstantiated and conclusory statements" in an employee affidavit to the effect that "the required notice of default was sent in accordance with the terms of the mortgage, combined with the copy of the notice of default" are insufficient "to show that the required notice was mailed by first class mail or actually delivered to the notice address if sent by other means."  *Eisler*, 118 A.D.3d at 983; *see HSBC Mortg. Corp. (USA) v. Gerber,* 100 A.D.3d 966, 966-67 (App. Div. 2012).  Those cases do not govern here because (1) in the posture of this case, it is Defendant's burden to show that a triable issue of fact exists as to its affirmative defense, not Plaintiff's burden to meet an evidentiary threshold; (2) the employee affidavit here does not only state that the notice was sent, but rather attests to Plaintiff's regular practice of mailing notices, which can constitute proof of mailing under New York law, *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985), and that Defendant's notice was mailed pursuant to that practice; and (3) the copy of the mailing envelope produced by Plaintiff bears postage.  Defendant argues that Marks cannot attest to the mailing of the notice because she is not the person who mailed it, but "personal knowledge [of an affiant] is required only to establish regular office procedure, not the particular mailing," *id.* at 817, so her testimony is admissible.  Defendant also argues that Plaintiff's regular practice is irrelevant because IndyMac Mortgage Services is the entity that allegedly mailed the notice.  (*See* D's Opp. 5 (citing Marks Aff. ¶ 11).)  Because IndyMac Mortgage Services is the servicing division of Plaintiff, (Marks Aff. ¶ 11), because the affiant is "fully familiar" with the circumstances, (*id.* ¶ 3), and because Plaintiff's files contain copies of the documentation generated by IndyMac Mortgage Services, however, the distinction urged by Defendant is insufficient to create an issue of fact.

[7] Defendant refers to paragraph 21(B)(v) in his brief, but clearly means to refer to 21(B)(vi).  (*See* D's Opp. 6.)

that the borrower "may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure." (*Id.* Ex. G at 8.) Defendant argues that this wording is misleading in that it indicates that the borrower would have to bring a separate court action to assert its defenses, and that Plaintiff was contractually obligated to use the verbatim language found in the mortgage agreement.

Plaintiff was not obligated to use the verbatim language from the agreement, because under New York law, a notice of default need only "*adequately* conform[] to the provisions of the mortgage which govern[] such notice." *First Trust Nat'l Ass'n v. Meisels*, 234 A.D.2d 414, 414 (App. Div. 1996); *see Indymac Bank, F.S.B. v. Kamen*, 68 A.D.3d 931, 931 (App. Div. 2009) (notice "substantially complied with the terms of the mortgage"). The notice used in this case, however, did not adequately conform to the provision in the mortgage. The mortgage required Plaintiff to notify Defendant that he had the right to assert defenses in a foreclosure lawsuit brought by the lender, whereas the notice told Defendant he could bring a lawsuit to assert such defenses. This could mislead an average consumer into thinking that he was required to initiate his own lawsuit in order to assert defenses, as opposed to being able to raise them in a foreclosure lawsuit initiated against him.[8]

---

[8] Plaintiff argues that the Appellate Division, Second Department, approved of the use of identical language in *Wachovia Bank, Nat'l Ass'n v. Carcano*, 106 A.D.3d 724, 725 (App. Div. 2013). Plaintiff has provided a brief filed in *Carcano*, of which I may take judicial notice as a public document. *Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272, 278 (S.D.N.Y. 2013) ("I may take judicial notice of these materials . . . for the fact that they exist and for what is in them, but not for their truth."). Contrary to Plaintiff's argument, the brief indicates that two notices were sent in *Carcano*, one of which was indeed similar to that sent in the instant case, but the other of which said, "[F]ailure to bring your account current may result in our election to exercise our right to foreclose on your property . . . You have the right to assert in court the non-existence of a default or any other defense to acceleration and foreclosure." (Doc. 58 Ex. 1 at 8 (as numbered) (emphasis omitted).) Because the borrower in *Carcano* was thus provided the information required by both the mortgage in *Carcano* and the instant mortgage, *Carcano* is not persuasive here.

"[S]trict compliance with contractual notice provisions need not be enforced," however, "where the adversary party does not claim the absence of actual notice or prejudice by the deviation." *Baygold Assocs., Inc. v. Congregation Yetev Lev of Monsey, Inc.*, 81 A.D.3d 763, 764, (App. Div. 2011), *aff'd*, 19 N.Y.3d 223 (2012). Defendant has not argued (let alone provided facts suggesting) that he lacked actual notice of his ability to assert defenses in a foreclosure action, or suffered prejudice as a result. In his brief, he argues that the "average homeowner" would be confused by the language in Plaintiff's notice, but does not allege that he was actually confused. (D's Opp. 6.) Indeed, Defendant obviously knows he can raise defenses in a foreclosure suit, because he has done just that. (*See* Doc. 27.) And he points to no prejudice he suffered from the defective notice. I find, therefore, that Plaintiff is entitled to summary judgment notwithstanding its failure to comply with paragraph 21(B)(vi) of the mortgage agreement.

*C. Abandoned Claims*

Plaintiff sought summary judgment on its claims as well as on all of Defendant's affirmative defenses and counterclaims, (*see* Doc. 48; P's Mem. 1),[9] and Plaintiff addressed all of those issues in its opening brief, (*see generally* P's Mem.). Defendant's failure to address any of them in response, except for those addressed above, constitutes abandonment of those claims. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

Accordingly, Plaintiff's motion is granted in its entirety.

---

[9] "P's Mem." refers to Plaintiff's Memorandum in Support of its Motion for Summary Judgment, (Doc. 49).

9

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 48).   Plaintiff is directed to submit a proposed Judgment no later than September 10, 2015.

**SO ORDERED.**

Dated:  August 26, 2015
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.